UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In re:

IRENE S. CHAFFEE,                                              Chapter 7
                          Debtor.                              Case No.: 07-11636
-----------------------------------------------------------------
SARA CHAFFEE,
                          Plaintiff,                           Adv. Pro. No.: 07-90171
              v.

IRENE S. CHAFFEE,
                          Defendant.
-----------------------------------------------------------------
APPEARANCES:

Richard Croak, Esq.
*Attorney for Defendant*
314 Great Oaks Blvd.
Albany, NY 12203

Miller & Meola                                                 Rudolph J. Meola, Esq.
14 Corporate Woods Blvd.
Albany, New York 12211
Of counsel to:
Derohannesian & Derohannesian
*Attorneys for Plaintiff*
677 Broadway, Suite 202
Albany, NY 12207

Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

Sara Chaffee ("Plaintiff") commenced the above-captioned adversary proceeding seeking a determination that a certain judgment debt (the "Debt") owed to the Plaintiff by Irene S. Chaffee ("Defendant") is excepted from discharge in Defendant's Chapter 7 bankruptcy case. More specifically, Plaintiff asserts that the Debt resulted from Defendant's willful and malicious conduct in injuring Plaintiff, thus making the Debt nondischargeable under 11 U.S.C. §

1

523(a)(6).[1]  Currently before the court is a motion for summary judgment filed by Plaintiff pursuant to Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056.  For the reasons set forth below, the motion is denied.

## Jurisdiction

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(I), and 1334(b).

## Background

The events leading up to this proceeding are as follows.  In 1990, when Plaintiff was six, Defendant reported to the New Hampshire Department of Health and Human Services, Division for Children, Youth & Families, that Plaintiff was being sexually abused by Plaintiff's stepfather, George Washington Chaffee ("George Chaffee").  (*See* Feb. 20, 2008 Aff. of Sara Chaffee (No. 19; hereinafter "Pl.'s Aff.") ¶ 2.)  In a subsequent police interview, George Chaffee stated that he was a bad father and that he liked to molest children when he drank.  (Pl.'s Aff. ¶ 3.)  On August 6, 1991, George Chaffee pled guilty to two counts of felonious sexual assault for sexually abusing Plaintiff and served time in New Hampshire state prison in connection therewith.  (Pl.'s Aff. ¶ 5; *see also* April 15, 2008 Aff. of Irene S. Chaffee (No. 25; hereinafter "Def.'s Aff.") ¶ 3.)  Three years after his release, in 1998, George Chaffee returned to live with Plaintiff and Defendant in the family home.  (Def.'s Aff. ¶¶ 3-4; Pl.'s Aff. ¶ 6.)

In 2000, when Plaintiff was sixteen, George Chaffee repeatedly engaged in sexual intercourse with Plaintiff without consent and by forcible compulsion.  (Pl.'s Aff. ¶¶ 7-8.)  On December 17, 2003, at the conclusion of a jury trial, the County Court for Rensselaer County convicted George Chaffee of three counts of rape in the third degree and one count of

---

[1]Unless otherwise noted, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

2

endangering the welfare of a child. (Pl.'s Aff. ¶ 9.) *Accord People v. Chaffee*, 30 A.D.3d 763, 763 (N.Y. App. Div. 3d Dep't 2006), *lv. den.*, 857 N.E.2d 71 (N.Y. 2006). On December 11, 2003, Defendant pled guilty to endangering the welfare of a child under § 260.10 of the New York Penal Law.[2] (Def.'s Aff. ¶¶ 12-13; Pl.'s Aff. ¶ 6; *see also* Feb. 25, 2008 Statement of Undisputed Facts (No. 20; hereinafter "Pl.'s SOF") Ex. B, Plea Tr. at 2, 6-7.) Based upon injuries sustained as a result of Defendant's criminal actions, Plaintiff filed a civil lawsuit against Defendant in the State of New York Supreme Court, Albany County and received an award of damages in the amount of $3,772,950.00.[3] (Pl.'s SOF ¶ 4; Pl.'s SOF Ex. C, Statement of J. ¶¶ 2-4.)

Defendant filed a voluntary Chapter 7 petition on June 6, 2007, listing on Schedule D (Creditors Holding Secured Claims) Plaintiff's $3,772,950.00 judgment lien.[4] (Case No. 07-11636, No. 1.) On September 13, 2007, Plaintiff commenced this adversary proceeding by filing

---

[2]Section 260.10 provides:
  § 260.10 Endangering the welfare of a child

  A person is guilty of endangering the welfare of a child when:

  1. He knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health; or

  2. Being a parent, guardian or other person legally charged with the care or custody of a child less than eighteen years old, he fails or refuses to exercise reasonable diligence in the control of such child to prevent him from becoming an "abused child," a "neglected child," a "juvenile delinquent" or a "person in need of supervision," as those terms are defined in articles ten, three and seven of the family court act.

  Endangering the welfare of a child is a class A misdemeanor.

  N.Y. Penal Law § 260.10 (McKinney 2003).

[3] The summary judgment record does not indicate the reasoning behind the award. On January 28, 2008, Defendant requested, among other things, the production of any transcripts of civil legal proceedings. The documents do not appear to have been produced and are not part of the summary judgment record.

[4]Schedule D lists the amount of claim as $4,000,000.00. By Order dated December 20, 2006, the Honorable John C. Egan, Jr. awarded damages to plaintiff Sara Chaffee and against defendants George Washington Chaffee and Irene Chaffee, jointly and severally, in the amount of $3,750,000.00, with statutory interest of $22,950.00, for a total of $3,772,950.00. (Pl.'s SOF Ex. C, Statement of J. ¶¶ 2-4.)

a complaint. (No. 1; hereinafter "Complaint" ¶ 1.)[5] Defendant filed an answer acknowledging the prior state court litigation between the parties but denying the preclusive effect of such litigation on this proceeding. (No. 15; hereinafter "Answer" ¶¶ 5-6.) On February 25, 2008, Plaintiff filed the present Motion for Summary Judgment. (No. 17.)

## ARGUMENTS

Plaintiff argues that this court should conclude that both Defendant's conviction on state criminal charges and the state court award of damages in favor of Plaintiff against Defendant, preclusively establish that the Debt is nondischargeable. Plaintiff urges this court to adopt the "substantial certainty" approach to the willful element of § 523(a)(6). Under that approach, it is argued, the Debt is for "willful" injury because Defendant pled guilty to "knowingly" endangering the welfare of a child under N.Y. Penal Law § 260.10. Plaintiff asserts that because "knowingly" entails an awareness that the result of conduct is *practically certain* to follow from such conduct and "willfully" entails an awareness that the result of conduct is *substantially certain* to follow from such conduct, the court should conclude that the Debt was for "willful" injury. Finally, Plaintiff argues that the *Rooker-Feldman* Doctrine prevents a challenge of the New York State Supreme Court judgment in this proceeding.

Defendant argues that the conviction and judgment are not entitled to preclusive effect. The thrust of Defendant's argument is that the Debt arose from the underlying civil case whereas the Motion for Summary Judgment is premised entirely on the prior criminal conviction.

## DISCUSSION

**I.    Summary Judgment Standard**

---

[5] Plaintiff filed the Complaint with a prior version of the adversary cover sheet (Form B104). Following the Clerk's Notice of Deficient Document Filed (No. 3), Plaintiff submitted an amended complaint with the current version of the cover sheet (No. 4). The Complaint and amended complaint are, in all other aspects, identical.

4

As the moving party, Plaintiff has the initial burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden then shifts to the Defendant to demonstrate the existence of a genuine dispute. *See In re Sexton*, 342 B.R. 522, 529 (Bankr. N.D. Ohio 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992)).

> Pursuant to Rule 56(c), incorporated by Bankruptcy Rule 7056(c), summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*In re Schachter*, Case No. 05-9404, 2007 WL 2238293, at *4 (Bankr. S.D.N.Y. Aug. 01, 2007) (citations omitted).

The record should be viewed in the light most favorable to the nonmoving party, Defendant in this case. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the nonmoving party should be afforded all reasonable inferences. *See id.* "However, in responding to a proper motion for summary judgment, the nonmoving party cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *In re Sexton*, 342 B.R. at 529 (internal quotation marks and citations omitted).

**II.    Section 523(a)(6)**

"The plaintiff has the burden of establishing the elements of § 523(a)(6) by a preponderance of the evidence." *Sanger v. Busch* (*In re Busch*) 311 B.R. 657, 665 (Bankr. N.D.N.Y. 2004) (citing *Grogan v. Garner*, 498 U.S. 279, 285 (1991)). "[E]xceptions from discharge are to be strictly construed so as to give maximum effect to the policy of the

5

bankruptcy code to provide debtors with a 'fresh start.'" *Kawaauhau v. Geiger* (*In re Geiger*), 113 F.3d 848, 853 (8th Cir. 1997) (citations omitted), *aff'd*, 523 U.S. 57 (1998). Section 523(a)(6) provides that "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6). Because the statutory requirements are set forth in the conjunctive, Plaintiff must satisfy both the "willful" and "malicious" prongs to prevail on a motion for summary judgment. *See In re Sexton*, 342 B.R. at 530; *In re Krautheimer*, 241 B.R. 330, 340 (Bankr. S.D.N.Y. 1999).

The Supreme Court interpreted the "willful" prong of § 523(a)(6) as follows:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

*Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (emphases in original) (quoting Restatement (Second) of Torts § 8A, cmt. a, p. 15 (1964)). Thus, the willful prong does not include debts that arise from negligently or recklessly inflicted injuries. *Id.* at 64.

> While *Geiger* addresses only the first prong of § 523(a)(6), the Second Circuit interpreted "malicious," as used in § 523(a)(6), to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti*, 94 F.3d 84, 87 (2d Cir.1996) (citations omitted). Actual malice may be implied by the circumstances surrounding the debtor's acts and conduct. *Id.* at 88.

6

*In re Busch*, 311 B.R. at 666.  To prevail on a motion for summary judgment, Plaintiff must prove that the Debt did not arise from Defendant's negligence or recklessness.  Plaintiff must additionally prove that the Defendant acted maliciously.

### III.     Collateral Estoppel

Plaintiff relies entirely on the doctrine of collateral estoppel to establish a prima facie case of "willful and malicious" injury under § 523(a)(6).  "The doctrine of collateral estoppel 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'"  *In re Markowitz*, 190 F.3d 455, 461 (6th Cir. 1999) (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)).

> The Second Circuit requires satisfaction of four conditions before a court may adopt findings of fact or conclusions of law from a prior proceeding to preclude relitigation of issues in a later proceeding:
>
> (1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*In re Busch*, 311 B.R. at 666 (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)).  The very narrow question presented to this court, therefore, is whether the nexus between Defendant's conviction under New York's child endangerment statute and the entry of an award against Defendant in the ensuing civil case qualifies for application of collateral estoppel to the "willful and malicious" requirements of § 523(a)(6).  It does not.  A question of material fact exists as to whether the conditions for the application of the doctrine of collateral estoppel have been met.

Plaintiff's argument for the application of the doctrine of collateral estoppel relies on two assumptions: first, that the standard for knowing endangerment of a child under § 260.10 of the

7

New York Penal Law is sufficiently similar to that for "willful and malicious injury" under § 523(a)(6); and second, that the civil court relied on the same standard as the criminal court in determining its award. The first presents a question of law,[6] the second a question of fact.

The summary judgment record includes Defendant's Indictment, Plea Allocution, and Certificate of Conviction, as well as a Statement of Judgment filed by the Plaintiff in the State of New York Supreme Court, Albany County.[7] Absent other relevant documents, the court must leap an inferential hurdle to conclude that the civil award of damages depends on the same finding of mental culpability as the criminal conviction. The court must find some other basis for both the intentional tort trigger set forth in *Geiger* and the implied malice standard set forth in *Stelluti* that would bring the Debt within the reach of § 523(a)(6).

This court is not aware of any case in which a conviction under § 260.10 of the New York Penal Law formed the basis for state law negligence per se or intentional tort per se claims. *See Sheila C. v. Povich*, 11 A.D.3d 120, 131-32 (N.Y. App. Div. 1st Dep't 2004) (holding that § 260.10 failed to define the prohibited conduct in a manner specific enough to give rise to a claim of negligence per se). In rejecting the proposition that violation of N.Y. Penal Law § 260.10 could constitute negligence per se, the *Povich* court noted that the statute,

> rather than imposing a specific duty or rule of conduct, is "broadly written," does not require "that the conduct be specifically directed at a child," and "does not require a particular outcome or actions aimed at a specific individual; the crime is solely defined by the risk of injury produced by defendant's conduct[.]"

---

[6] See discussion *infra* Section V.

[7] Missing from the record is the underlying complaint in civil court, the December 20, 2006 Order from the Honorable John C. Egan, Jr. (referenced in the Statement of Judgment) awarding damages to Plaintiff and against Defendant, and the reasoning upon which Judge Egan based the award. The court is perplexed by the absence of such documents. They may well have provided the substance Plaintiff's motion otherwise lacks.

8

*Povich*, 11 A.D.3d at 131 (quoting *People v. Johnson*, 740 N.E.2d 1075, 1076 (N.Y. 2000)). The court consequently held that "[b]ecause the statute sets forth a general, abstract standard prohibiting individuals from knowingly engaging in acts likely to be injurious to the physical, mental or moral welfare of a minor, without specifically defining those acts, it cannot support a claim for negligence per se." *Id.* at 131-32 (footnote omitted).

Moreover, it appears that subdivision one of § 260.10—the subdivision under which Defendant was convicted—does not require any injury, let alone willful and malicious injury. "[S]ubdivision one requires a person to refrain from conduct which . . . she knows is 'likely' to be injurious to the physical, mental or moral welfare of [a] child. The key term is 'likely'; there is no requirement that the physical, mental or moral welfare of the child was in fact injured." William C. Donnino, Practice Commentary, N.Y. Penal Law § 260.10 (McKinney 2000) (citations omitted); *see also People v. Watson*, 700 N.Y.S.2d 651, 653 (N.Y. City Crim. Ct. 1999) ("No injury or actual harm need result from the accused's actions for criminal liability to be imposed.") (citations omitted).

Based on the above, an intentional tort has not been established; nor is it clear that the actual malice standard has been satisfied. A question of fact remains as to whether the issue in the prior civil proceeding, Defendant's mental state, was actually litigated and actually decided. A question of fact also remains as to whether there was a full and fair opportunity for litigation in the prior proceeding. Plaintiff alleges that Defendant appeared in civil court and actively contested the issue of damages. Defendant specifically denies that allegation. Because this court is left to base its opinion solely upon the documents in the summary judgment record, it is not in a position to determine whether the award of damages, i.e., the Debt, was based upon the requisite finding of willful and malicious injury. The connection between Defendant's

9

conviction in the criminal case and Plaintiff's award of damages against Defendant in the ensuing civil case is not sufficiently defined to warrant the application of collateral estoppel.

## IV.    *Rooker-Feldman* Doctrine

The Supreme Court of the United States is vested with exclusive jurisdiction over appeals from final state-court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (citing 28 U.S.C. § 1257; *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 286 (1970); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). "Accordingly, under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Id*. Plaintiff's reliance on the *Rooker-Feldman* doctrine is misplaced here. "[Defendant] is not seeking to have the bankruptcy court review the merits of the state court judgment; rather, [s]he is attempting to prevent the bankruptcy court from giving effect to the state court judgment. Likewise, [Plaintiff] is not seeking modification of the state court judgment; [she] is attempting to save the judgment from bankruptcy discharge." *See In re Sasson*, 424 F.3d 864, 871 (9th Cir. 2005).

## V.    Section 523(a)(6) Analysis

The Supreme Court's decision in *Kawaauhau v. Geiger*, 523 U.S. 57, governs the definition of "willful" under § 523(a)(6).[8] This court recognizes the split of authority regarding the precise state of mind required to satisfy the willfulness prong of § 523(a)(6). In *In re Busch*, the court found no support for the position that a substantial certainty for harm can satisfy the statute's willfulness prong. 311 B.R. at 669. Because a question of fact exists as to the standard upon which the civil court based its award, the outcome of Plaintiff's Motion for Summary

---

[8] Because the court concludes that the summary judgment record is insufficient as a matter of law to permit a trier of fact to find that the Debt was "for willful . . . injury" under § 523(a)(6), it does not address the statute's "malicious" prong.

10

Judgment is the same under either the "specific intent" or "substantial certainty" approaches. Thus, the court is not compelled to review its position at this time.

While it is undisputed that Plaintiff sought civil remedies "[b]ased upon the injuries sustained as a result of defendant's criminal actions" and, as a result, received an award of damages in New York State Supreme Court, Albany County (Pl.'s SOF ¶ 4), this does not *ipso facto* mean that the state court made the requisite finding of Defendant's mental state in determining its award. Absent proof of the reasoning upon which the state court based its award (e.g., the state court complaint, the December 20, 2006 Order awarding damages, or transcripts of related hearings), a question of fact remains as to whether the Debt resulted from Defendant's "willful" injuries to Plaintiff. Based on the record and any reasonable inferences derived therefrom, the state court could have based its award on a finding of a lower mental state—such as negligence or recklessness. *Geiger* and its progeny dictate that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. at 64; *see, e.g.*, *In re Patch,* 526 f.3d 1176, 1183 (8th Cir. 2008); *In re Williams*, 337 F.3d 504, 508-09 (5th Cir. 2003).

The statutory policy in favor of giving debtors a "fresh start" by freeing them of liability thus has come to collide with the equities of this case. Seldom is the bankruptcy court called upon to protect the rights of children. This is one of those rare cases. Alas, bankruptcy courts can and must only exercise their equitable powers "within the confines of the Bankruptcy Code." *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). Congress has yet to carve out an exception to discharge for debts arising from the sexual abuse or endangerment of a child; to date, Congress limits the exceptions to a narrow list of nineteen. *See* 11 U.S.C. § 523(a). For

purposes of this motion, the court cannot conclude that the Debt owed to the Plaintiff by the Defendant is excepted from discharge as a matter of law.

The court sympathizes with Plaintiff's suffering. Nonetheless, it is without statutory authority to afford Plaintiff a remedy at this time. The court notes that its holding is based on the limited pleadings, affidavits, and complaint in the summary judgment record. Willful and malicious injury may well lurk in the background of this case. The decision today in no way prevents Plaintiff from potentially prevailing after a plenary trial on the merits.

## CONCLUSION

Based upon the foregoing, the Plaintiff's Motion for Summary Judgment is denied, and the court shall serve notice of a pretrial conference.

It is so ORDERED.

Dated:   January 12, 2009
             Albany, New York

/s/ Robert E. Littlefield, Jr.
_____

Hon. Robert E. Littlefield, Jr.
Chief U.S. Bankruptcy Judge