UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------
In re:

IRENE S. CHAFFEE,                                       Chapter 11
                                                        Case No. 07-11636

                                           Debtor.
---------------------------------------------------------------
SARA CHAFFEE,[1]

                                           Plaintiff,

     -against-                                    Adv. No. 07-90171

IRENE S. CHAFFEE,

                                           Defendant.
---------------------------------------------------------------
APPEARANCES:

DEROHANNESIAN & DEROHANNESIAN        Paul Derohannesian, Esq.
*Attorneys for Plaintiff*
39 North Pearl Street, 1st Floor
Albany, New York 12207

RICHARD CROAK, ESQ.                           Richard Croak, Esq.
*Attorney for Defendant*
314 Great Oaks Blvd.
Albany, NY 12203

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

     Upon remand from the district court, the matter before the court is the complaint of Sara

Chaffee (the "Plaintiff") seeking a determination that a certain judgment debt against Irene

Chaffee (the "Debtor") is nondischargeable under § 523(a)(6).[2]

## JURISDICTION

---

[1] After the filing of this adversary proceeding, the Plaintiff changed her name to Sara Alvarez, the name which she currently holds.
[2] All statutory references are to title 11 of the United States Code unless otherwise noted.

1

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core matter pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(I).

## PROCEDURAL AND FACTUAL HISTORY

The dispute before the court stems from the horrific sexual abuse inflicted upon the Plaintiff by the Defendant's husband and Plaintiff's step-father, George Chaffee. The following constitutes the court's finding of fact on remand and are derived from the parties' Joint Stipulation of Facts ("Joint Stip.," ECF No. 53) and the evidence presented at trial. Sara Chaffee was born on November 16, 1983. (Trial Tr. 7, November 9, 2009, ECF No. 60.) Irene Chaffee is the Plaintiff's mother. (Trial Tr. 7.) When the Plaintiff was approximately three years old, the Debtor married George Chaffee. (Trial Tr. 8.) George Chaffee had three sons from a prior marriage and the Debtor had two, the Plaintiff and her brother, Shannon. (Trial Tr. 8.) After they were married, the Debtor, George Chaffee and their five children lived in New Hampshire. (Trial Tr. 9.)

When the Plaintiff was between four and six years old, she was sexually assaulted repeatedly by her step-father, George Chaffee. (Trial Tr. 9.) The assaults were not revealed until one night when the Plaintiff was sleeping in Shannon's room, and George Chaffee came in looking for Sara. (Trial Tr. 11.) Shannon told his mother about George Chaffee's assault of Sara the next morning. (Trial Tr. 11.)

George Chaffee was arrested and charged with sexually assaulting Sara. (Trial Tr. 12.) The New Hampshire Judge issued an order of protection for Sara prohibiting George Chaffee from having contact with Sara. (Trial Tr. 12.) Despite the order of protection, the Debtor bailed George out of jail and allowed him back into the family home. (Trial Tr. 12.) In further violation of the court order, George Chaffee and the Debtor moved their family to a campsite in

2

New York for the summer. (Trial Tr. 13.) When Sara and Shannon started school in New York in September, Shannon told a teacher they were living at a campsite because George Chaffee had been arrested in New Hampshire. (Trial Tr. 13.) As a result, Sara and Shannon were taken from their parents and put in foster care, and George Chaffee was arrested for violating the terms of his release. (Trial Tr. 20.) The Debtor was also arrested for endangering the welfare of a child by placing Sara in contact with George Chaffee. (Trial Tr. 20.)

The charges against the Debtor were eventually dropped. (Trial Tr. 21.) On or about August 6, 1991, George Chaffee pleaded guilty in New Hampshire to two counts of felonious sexual assault of a minor for sexually abusing Sara. He was sentenced to incarceration in a New Hampshire state prison.

After her arrest, the Debtor underwent counseling in New Hampshire so that she would understand the danger she had put Sara in by allowing her to have contact with George Chaffee, as well as the risk of further assaults to Sara by George Chaffee if he were permitted to have contact with her in the future. (Trial Tr. 137.) Upon their release from foster care, Sara and Shannon went to live with the Debtor in New York. (Trial Tr. 22.) The Debtor was employed in New York as a nurse. (Trial Tr. 74.) The Debtor continued to receive counseling in New York. (Trial Tr. 137.) There continued to be restrictions on George Chaffee's contact with Sara while he was imprisoned. (Trial Tr. 29.)

At trial, the Debtor reiterated her understanding of the danger and likelihood of further injury and sexual assault to Sara if she permitted George Chaffee to have contact with Sara. More particularly, the Debtor testified as follows:

> Q: And was the purpose of that counseling so you would understand the danger you were placing Sara in by allowing her to have contact with George?

3

A:    Yes.

Q:    As a result of that counseling you believe that you understood the danger that Sara was in if she had contact with George?

A:    Right, I did.

Q:    And you understood that contact could allow her to be physically or sexually abused, correct?

A:    Correct.

Q:    That was discussed in counseling, wasn't it?

A:    Yes.

Q:    One of the goals of that counseling was to try to get you to understand in the early 1990s the harm that could be inflicted to Sara, correct?

A:    Yes.

. . . .

Q:    The – [sic] in your mind did you understand the risk to Sara of being in contact with George at the time you were in counseling?

A:    Yes.

Q:    Did that understanding of yours ever change from 1990 until 2000?

A.    No.

Q:    So you always understood the danger that Sara was in if she had contact with George, correct?

A:    Right.

Q:    And that danger was one of sexual abuse, correct?

A:    Yes.

. . . .

Q    You didn't believe there was any danger of physical abuse?

A:    No.

4

Q: But you did believe there was a danger of sexual abuse?

A: Yes.

(Trial Tr. 137-39.)

Upon his release from prison, George Chaffee was ordered to live in a halfway house in New Hampshire and to have only supervised visitations with Sara. (Trial Tr. 26-27, 141-42.) On a visit to New Hampshire to see George Chaffee, the Debtor, George Chaffee, the boys, and Sara went to a mall in violation of George Chaffee's release conditions. (Trial Tr. 27-28.) The family was seen at the mall by George Chaffee's parole officer. (Trial Tr. 27-28.) As a result, George Chaffee was ordered to serve an additional year in jail. (Trial Tr. 28.) When asked about this incident, the Debtor testified that she understood George Chaffee had violated a condition of his release by having unsupervised contact with Sara. (Trial Tr. 145.) She also indicated she understood the concern that "the authorities had back then that there be no contact between [George Chaffee] and Sara." (Trial Tr. 146.)

When George Chaffee was released from jail on parole, in or about 1997 or 1998, there continued to be restrictions on George Chaffee's contact with Sara. (Trial Tr. 152.) He was not allowed to have unsupervised contact with Sara. (Trial Tr. 152.) The Debtor's testimony indicates she was aware of these restrictions.

Q: [W]hile [George was] on parole there were certainly restrictions in terms of with his contact with Sara, correct?

. . . .

A: Yes, but we were working with the therapist.

Q: There were restrictions? He could not have free contact—

A: Right.

Q: -- with Sara whenever he wanted, correct?

5

    A:    That's right.

    Q:    And you knew that?

    A:    Yes.

    Q:    And you knew why that was restricted, correct?

    A:    Yes.

(Trial Tr. 152.)

George Chaffee, however, violated the terms of his parole, by traveling to New York and living with the Debtor, Sara, and the boys. (Trial Tr. 30.) Upon George Chaffee's release from parole, he officially returned to live with the Debtor, Sara, and the boys in Hoosick, New York. (Trial Tr. 141.) According to the Debtor, it was then up to her to supervise George Chaffee's contact with Sara. (Trial Tr. 141.) The Debtor understood George Chaffee's contact with Sara still had to be supervised by an adult, and it would most likely be her. (Trial Tr. 175.)

In the fall of 2000, George Chaffee continued to live with the Debtor, Sara, and the boys in Hoosick, New York. (Trial Tr. 161.) He also kept an apartment in Manchester, New Hampshire, where he was working for better pay. (Trial Tr. 162.) In November 2000, George Chaffee raped Sara on three separate occasions in their Hoosick, New York home while Irene was at work.[3] (Trial Tr. 28, 64.) Sara was sixteen years old. (Trial Tr. 35.)

In or about November 2003, after a jury trial in Rensselaer County, George was convicted of three counts of rape in the third degree and one count of endangering the welfare of a child. He was sentenced to six to twelve years of imprisonment on the rape charges and one year imprisonment on the charge of endangering the welfare of a child. In connection with the rape charges against George Chaffee, on or about December 11, 2003, the Debtor was charged

---

[3] While there were inconsistencies in Plaintiff's testimony as to when the Plaintiff told the Debtor about the rapes, those inconsistencies are not material to the outcome of this proceeding because the court's findings of willful and malicious under § 523(a)(6), as discussed *infra*, are premised upon the Debtor's own admissions at trial.

and pled guilty to endangering the welfare of a child under § 260.10 of the New York Penal Law. (Trial Tr. 164.) The Debtor was sentenced to time-served, three years of probation and a final order of protection was issued.

In or about November 2004, a civil action was commenced by Sara against George Chaffee and the Debtor to recover for the injuries she suffered as a result of the criminal actions of George Chaffee and the Debtor. Sara asserted only one cause of action against the Debtor for negligent infliction of emotional distress. No intentional torts were alleged against the Debtor. Seven causes of action were asserted against George Chaffee, namely, three for assault, three for battery, and one for negligent infliction of emotional distress. The negligent cause of action against Irene was premised upon allegations that she failed to prevent, stop, report, or otherwise acknowledge the sexual abuse of Sara by George Chaffee that was occurring in the family's Hoosick, New York home. Both George Chaffee and the Debtor defaulted in answering the civil complaint. Subsequently, Sara was awarded a judgment by default on the issue of liability against George Chaffee on the two causes of action for assault, two causes of action for battery, and one cause of action for negligent infection of emotional distress. Additionally, the Plaintiff was awarded a judgment by default against the Debtor on the sole cause of action asserted against her for negligent infliction of emotional distress. An inquest hearing on the issue of damages was conducted on April 3, 2006. The Debtor attended the inquest hearing. Ultimately, George Chaffee and the Debtor were directed to pay Plaintiff damages in the amount of $3.75 million. Since the entry of the $3.75 million judgment, George Chafee died; therefore, the judgment remains only against the Debtor. The $3.75 million civil award is the debt the Plaintiff is seeking to have deemed nondischargeable as a debt "for willful and malicious injury" under § 523(a)(6).

Irene Chaffee filed a petition for relief under chapter 7 on June 8, 2007. Sara Chaffee was listed on Schedule D of the petition as a creditor holding a judgment in the amount of $4 million.

## PROCEDURAL HISTORY

The Plaintiff commenced this adversary proceeding with the filing of a summons and complaint on September 13, 2007. An amended complaint was filed on September 28, 2007. An answer was filed by the Debtor on January 2, 2008, acknowledging the prior state court litigation between the parties but denying the preclusive effect of the litigation on this proceeding. The Plaintiff moved for summary judgment relying on the doctrine of collateral estoppel and arguing that the Debtor's criminal conviction for endangering the welfare of a child under New York Penal Law 260.10 establishes the requirement of "willful and malicious" under § 523(a)(6) to deem the civil judgment nondischargeable. Summary judgment was denied as the court could not find, based upon the record before it, a nexus between the Debtor's conviction in the criminal case and the award of damages to the Plaintiff and against the Debtor in the civil case sufficient to warrant application of collateral estoppel. More specifically, the court found the Plaintiff failed to provide any record of the civil case that would have allowed the court to make the inferential leap to conclude that the civil award of damages depended on the same finding of mental culpability as the criminal conviction. *Chaffee v. Chaffee (In re Chaffee)*, Ch.7 Case No. 07-11636, Adv. No. 07-90171, 2009 WL 2872834 (Bankr. N.D.N.Y. Jan. 12, 2009), *aff'd*, *Chaffee v. Chaffee*, 1:09-MC-0014, 2009 U.S. Dist. LEXIS 45344 (N.D.N.Y. May 29, 2009).

Thereafter, a trial was conducted on November 9, 2009. By Memorandum, Decision and Order entered August 10, 2010 (the "Decision"), the Complaint was dismissed as the court found the debt the Plaintiff sought to have deemed nondischargeable was the result of a state court

8

cause of action and subsequent judgment based solely on negligence and not an intentional tort. The Plaintiff appealed the Decision, and the district court granted the appeal and remanded the matter for findings consistent with its Decision and Order entered September 30, 2011.[4] *Chaffee v. Chaffee*, 1:10-cv-1136 (LEK/REL), 2011 WL 4593758 (N.D.N.Y. Sept. 30, 2011) (the "District Court Decision and Order"). Familiarity with the Decision and the District Court Decision and Order is presumed. Upon remand, the court directed the parties to file additional memoranda of law in support of their positions consistent with the District Court Decision and Order. Applying the law as articulated by the district court and for the reasons set forth below, the court now finds in favor of the Plaintiff.

## ARGUMENT

The Plaintiff argues that her pre-petition judgment against the Defendant for negligent infliction of emotional distress is a debt for willful and malicious injury by the Debtor and, thus, nondischargeable under § 523(a)(6). Plaintiff contends Defendant's willful conduct included: repeatedly violating, over several years, state court orders designed to prevent the Plaintiff from being sexually assaulted; breaching her non-delegable duty as a parent under New York law to prevent the Plaintiff from being sexually assaulted; and admittedly endangering the Plaintiff by her plea of guilty to knowingly allowing the Plaintiff to be sexually assaulted after being told of the Plaintiff being raped and knowing the history of prior sexual assaults of the Plaintiff by George Chaffee. Plaintiff asserts that the court should adopt a "substantial certainty" approach to the willful element of § 523(a)(6). The Plaintiff contends that the Defendant's guilty plea to "knowingly" endangering the welfare of a child under N.Y. Penal Law § 260.10 in a prepetition

---

[4] On appeal, the district court, citing to *Brown v. Felsen*, 442 U.S. 127, 133 (1979), concluded that *res judicata* does not apply to this matter. The district court also found that collateral estoppel could not be invoked by the Plaintiff as the state court's default judgment was entered without a determination as to whether Plaintiff's injuries were "willful and malicious," as a plaintiff is not required to show, nor is the state court required to make, such findings when determining liability based upon negligent infliction of emotional distress.

9

criminal proceeding establishes that the debt underlying the civil judgment is the result of a willful injury.

The Debtor makes three arguments. First, the Debtor contends this case presents an issue of *res judicata*, not collateral estoppel, because no findings were made in connection with liability by the state court for the bankruptcy court to adopt as the negligent infliction of emotional distress cause of action was granted by default. Second, the Debtor asserts she cannot be held liable for the intentional acts of another. Finally, the Debtor argues "willful" under § 523(a)(6) requires a showing that the tortfeasor intended the injury, not that an injury was caused by an intentional act.

## DISCUSSION

The principal purpose of the Bankruptcy Code is to provide a "fresh start" to the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007) (citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). In the case of an individual Chapter 7 debtor, a fresh start is accomplished by allowing the debtor a discharge from all debts that arose prior to the filing of the bankruptcy petition in exchange for liquidation of the debtor's non-exempt assets for the benefit of the debtor's creditors. *See* 11 U.S.C. § 727(b). There are, however, certain categories of debts set forth in § 523(a) that are excepted from discharge. Exceptions to discharge must be strictly construed in order to give effect to the "fresh start" policy of the Code. *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996). The plaintiff has the burden of satisfying the elements of the nondischargeability claim by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. at 285, 111 S.Ct. 654, 112 L.Ed.2d 755.

Section 523(a)(6) excepts from discharge debts incurred "for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). "The purpose of section 523(a)(6) is to avoid rewarding blameworthy debtors through discharge." *In re Krautheimer*, 241 B.R. 330, 340 (Bankr. S.D.N.Y. 1999). A creditor seeking to except a debt from discharge for a debtor's "willful and malicious injury" must establish that the injury is both "willful" and "malicious," as these are two separate elements. *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006.)

The Second Circuit has interpreted "malicious" under § 523(a)(6) to mean, "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Financial Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996) (citations omitted). Malice may be actual or implied by the circumstances surrounding the debtor's acts and conduct. *Id.* at 88. Debtor's conduct towards Sara in November 2000 was contrary to commonly accepted parental duties owed to a child. *See In re Mitchell*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998) ("Malice is implied when 'anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'" (quoting *In re Stelluti*, 167 B.R. at 33, *aff'd*, 94 F.3d 84)). Sexual abuse of any kind, let alone that of a child, is illegal and morally reprehensible. Therefore, it is impossible to imagine a situation where a parent's conduct in allowing the convicted predator to have unsupervised contact with the abused child, when she is aware of the danger it puts her child in, could not be construed as anything but "wrongful and without just cause or excuse." *In re Stelluti*, 94 F.3d at 87. Thus, the Plaintiff has satisfied the second prong of § 523(a)(6).

An injury is willful under § 523(a)(6) only if intended. *In re Jendusa-Nicolai v. Larsen (In re Larsen)*, 677 F.3d 320, 322 (7th Cir. 2012) (citing *Kawaauhau v. Geiger,* 523 U.S. 57, 61-62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)). In the seminal case construing willful in § 523(a)(6),

11

the Supreme Court held that because "willful" modifies the word "injury," a finding of nondischargeability "takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (emphasis in original). Debts arising from negligently or recklessly inflicted injuries do not fall within the exception from discharge provided by § 523(a)(6). *Id.* at 64, 118 S.Ct. 974. The Court relied upon the Restatement (Second) of Torts, noting that:

> [A]s the Eighth Circuit observed, the [§ 523](a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

*Id.* at 61-62, 118 S.Ct. 974 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)). "Intent" is used throughout the Restatement (Second) of Torts, cited by the Supreme Court in *Geiger*, "to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965).[5] Thus, "if the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired

---

[5] In *Sanger v. Busch (In re Busch)*, 311 B.R. 657 (Bankr. N.D.N.Y. 2004), decided almost ten years ago, the court held that a minority of courts were applying a "substantial certainty" test to determine the "willful" element of § 523(a)(6) and rejected such a test. Instead, the court applied an actual intent test. After further reflection and with the benefit of several circuit level decisions, *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012); *Morris v. Brown (In re Brown)*, 489 F.Appx. 890, 895 (6th Cir. 2012); *Guerra & Moore, Ltd. v. Cantu (In re Cantu)*, 389 F. Appx. 342, 345 (5th Cir. 2010); *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008); *In re Granoff*, 250 F.Appx. 494, 495 (3d Cir. 2007); *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004), the court embraces the common law concept of intentional tort and concludes willfulness may be found under *Geiger* where the debtor intends the injury or where there is substantial certainty on the part of the debtor that his actions will result in injury. Despite the foregoing, the court's decision in *Busch* would remain unchanged as the plaintiff had not sustained her burden of proving by a preponderance of the evidence facts sufficient to satisfy § 523(a)(6). In *Busch*, the plaintiff obtained a default sexual harassment judgment against the debtor and sought to have it deemed nondischargeable under § 523(a)(6). While the debtor did testify at the trial, the plaintiff did not. To the extent there were discrepancies in the transcript of the plaintiff's testimony from the district court proceeding introduced at the bankruptcy trial and the debtor's testimony at trial, the court was unable to assess the credibility and demeanor of the plaintiff. The plaintiff relied heavily on the collateral estoppel effect of the district court judgment instead of supplementing the record with evidence that would have supported the elements of § 523(a)(6) and, because of the sparsity of the district court record, it could not be ascertained whether the jury based its award of punitive damages on a finding of malice or reckless indifference, the latter of which is insufficient to establish "willfulness" under *Geiger*.

to produce those consequences." *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008). A high probability of causing injury is not enough. *Conte v. Gautam (In re Conte)*, 33 F.3d 303, 307 (3d Cir. 1994).

The pre-petition judgment against the Debtor that Plaintiff seeks to except from discharge was based upon a single negligent cause of action asserted against the Debtor. No cause of action for an intentional tort or willfulness was asserted against the Debtor in the state court complaint. Section § 523(a)(6) includes elements not established by the state court judgment based upon negligence. The doctrine of *res judicata* is not applicable in determining whether a debt previously reduced to judgment is discharged in bankruptcy. *Brown v. Felson*, 442 U.S. 127, 138-39, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Thus, a bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of a debt. *Id.* When a debtor asserts a new defense of bankruptcy, *res judicata* does not bar the creditor from offering additional evidence to meet that defense. *Id.* A bankruptcy court may review evidence beyond the prior court record and weigh all the evidence in order to determine dischargeability. *Neshewat v. Salem (In re Salem)*, 290 B.R. 479, 484 (S.D.N.Y. 2003) (citation omitted), *aff'd*, 94 Fed. Appx. 24 (2d Cir. 2004). The underlying state court cause of action creating the pre-petition debt must not be confused with the characterization of debts excepted from discharge. *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 781 (Bankr. S.D.Tex. 2008) (citing *Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 332 (10th Cir. 1994)).

Here, upon his release from prison, the Debtor permitted George Chaffee to move back into her home with their children, including Sara, and to remain in the home alone with Sara when she went to work. Although the Debtor may have been motivated by other things, whether

the family's finances, her own desire for companionship, or some other reason, intent is not limited to consequences which are desired.  Restatement (Second) of Torts § 8A, Comment b, p. 15 (1964).  It is undisputed that the Debtor understood the risk of George Chaffee sexually abusing Sara again if he was left unsupervised with her.  Because the Debtor knew that the consequences were certain, or substantially certain, to result from her actions, and she still went ahead, she must be treated as if she had in fact desired to produce the result.  Based upon the foregoing, the court concludes that the Debtor's actions were willful pursuant to § 523(a)(6).

The Plaintiff has established by a preponderance of the evidence that the Debtor's debt to her arose from willful and malicious injury and is consequently nondischargeable.

> [A] [d]ischarge in bankruptcy is an equitable form of relief . . . , it will not be allowed in cases where debts arose from conduct involving egregious circumstances.  Thus, debts for willful and malicious injury are morally distinguishable from other types of debt deserving of discharge . . . .  Indebtedness resulting from this type of [socially reprehensible] conduct is not worthy of discharge in bankruptcy.

*In re Krautheimer*, 241 B.R. 330, 340 (quoting Ahrend and Thomsen, Tort Claims and Judgments as Debts for "Willful and Malicious Injury" Nondischargeable Under Section 523(a)(6) of the Bankruptcy Code, 100 Com. L.J. 498, 531 (1995)).

## CONCLUSION

For the reasons set forth herein, the Plaintiff's objection to the dischargeability of her judgment debt against the Debtor is sustained under § 523(a)(6).

It is so ORDERED


Dated: September 3, 2013                    /s/ Robert E. Littlefield, Jr.
                                            Robert E. Littlefield, Jr.
                                            Chief United States Bankruptcy Judge